# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR GARCIA, JR., | Case No. 1:14-cv-00476-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| TULARE COUNTY MAIN JAIL, et al., | FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Omar Garcia, Jr. ("Plaintiff"), proceeding pro se and in forma pauperis, initiated this civil rights action pursuant to 42 U.S.C. § 1983 while he was detained at the Bob Wiley Detention Facility in Visalia, California. Plaintiff is now a state prisoner housed at California State Prison, Los Angeles County. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 5.) Defendants O'Rafferty, Kaiois (sued as C. Kaious), Onstott, Flores, Myers (sued as Meyers), Avina, and Ellis also consented to Magistrate Judge jurisdiction. (ECF No. 19.)

On July 22, 2015, after the opening of discovery, Plaintiff filed a motion to amend the complaint and lodged his first amended complaint. (ECF Nos. 20, 21.) On February 16, 2016, the Court granted Plaintiff's motion and the first amended complaint was filed. (ECF Nos. 23, 24.)

///

1

On April 21, 2017, the Court screened Plaintiff's first amended complaint and found that he stated a cognizable claim against (1) Defendants O'Rafferty and Kaiois for excessive force in violation of the Fourteenth Amendment, (2) Defendant Onstott for failure to intervene in violation of the Fourteenth Amendment; (3) against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment; and (4) a state law negligence claim against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis. The Court dismissed all other claims and defendants from this action, with prejudice. (ECF No. 33.) This case has proceeded on Plaintiff's claims against Defendants O'Rafferty, Kaiois, Onstott, Flores, Myers, Avina, and Ellis.

## I. Williams v. King

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Ninth Circuit held that a Magistrate Judge does not have jurisdiction to dismiss a case or claims during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, all Defendants were not yet served at the time that the Court screened the third amended complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Defendants O'Rafferty, Kaiois, Onstott, Flores, Myers, Avina, and Ellis consented to Magistrate Judge jurisdiction once they were served and appeared in this action. (ECF No. 19.) However, Defendant Tulare County had not been served at the time the first amended complaint was screened. Because all Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in the previous screening order, she will below recommend to the District Judge that the non-cognizable claims be dismissed.[1]

---

[1] On August 16, 2017, Defendants filed a motion for summary judgment for the failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a) and failure to comply with the Government Tort Claims Act. (ECF No. 36.) As discussed herein, these findings and recommendations are based upon a screening of the allegations in Plaintiff's first amended

1    **II.     Findings and Recommendations on First Amended Complaint**

2          **A.     Screening Requirement and Standard**

3          The Court is required to screen complaints brought by prisoners seeking relief against a

4    governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. §

5    1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

6    malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

7    relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C.

8    § 1915(e)(2)(B)(ii).

9          A complaint must contain "a short and plain statement of the claim showing that the

10    pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

11    required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

12    conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937,

13    1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65

14    (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge

15    unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)

16    (internal quotation marks and citation omitted).

17          Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

18    liberally construed and to have any doubt resolved in their favor.  Hebbe v. Pliler, 627 F.3d 338,

19    342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially

20    plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each

21    named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949

22    (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir.

23    2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere

24    consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678,

25    129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

26    ─────────────────────────────────────────────

27    complaint pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B), at the time that it
was filed. The Court makes no findings on the merits of the arguments, defenses, or affirmative
defenses raised in the pending motion for summary judgment.  Separate findings and

28    recommendations will issue on that motion in due course.

### B. Plaintiff's Allegations

As noted above, Plaintiff is a state prisoner. However, the events alleged in Plaintiff's first amended complaint occurred while he was a pre-trial detainee housed at the Tulare County Main Jail. Plaintiff names the following defendants: (1) Tulare County; (2) Matt O'Rafferty; (3) Christopher Kaiois; (4) Matthew Onstott; (5) Jesus Flores, Jr.; (6) Darrell Myers, (7) Louis Avina; and (8) Stephen Ellis.

Plaintiff alleges as follows: On April 2, 2012, at approximately 8:00 p.m., Plaintiff was physically assaulted by one of his cellmates, who attempted to strangle Plaintiff from behind. Inmates housed in neighboring cells began to yell out to on-duty deputies for help. The responding deputies removed Plaintiff from the cell and placed him in a holding cell to investigate the incident. Plaintiff complained to several deputies about difficulty breathing. Plaintiff was then moved to another holding cell.

At approximately 8:10 p.m., Deputy McCuen arrived to re-house Plaintiff to the fourth floor. Plaintiff advised Deputy McCuen that he continued to have trouble breathing, along with severe pain in his neck and throat. Plaintiff requested emergency treatment for his injuries with no result.

At approximately 11:30 p.m., Defendants O'Rafferty and Kaiois arrived at the holding cell to escort Plaintiff to the nurses' station so that Plaintiff could be evaluated for his injuries. Defendants O'Rafferty and Kaiois were angry that Plaintiff had requested medical attention, and with tasers in hand, ordered Plaintiff to stand up so that he could be escorted to see the nurse. Plaintiff complied, standing up with his hands behind his back, and exited the holding cell.

On route to see the nurse, Defendant O'Rafferty verbally assaulted Plaintiff and stated, "You're not so tough without a firearm." Defendant Kaiois opened the elevator door and instructed Plaintiff to step inside. Defendant O'Rafferty continued to verbally assault Plaintiff, teasing him about being strangled, and calling Plaintiff a "pussy." As he entered the elevator, Plaintiff replied, "You're a bigger pussy!" Defendant O'Rafferty then shoved Plaintiff to the back of the elevator, causing Plaintiff to suffer intense pain. Defendants O'Rafferty and Kaiois stepped into the elevator. After the elevator door closed, Defendant O'Rafferty continued to

4

1  verbally assault Plaintiff, stating "Fuck you!"  Plaintiff replied, "Fuck you twice!"

2        At no time did Plaintiff make any aggressive move, and was facing the back of the

3  elevator with his hands behind his back.  Defendant O'Rafferty immediately started striking

4  Plaintiff on the right side of the head and the back of the head multiple times.  Defendant Kaiois

5  joined in and struck Plaintiff multiple times on the left side and upper torso area, rendering

6  Plaintiff unconscious.

7        Once Plaintiff regained consciousness, Defendants O'Rafferty and Kaiois lifted Plaintiff

8  to his feet with the assistance of an unknown officer.  Plaintiff was taken off the elevator on the

9  second floor and escorted to the nurses' station for a medical examination related to the attempted

10  strangulation that occurred earlier.

11        As Plaintiff was escorted inside the nurses' office, Defendant O'Rafferty struck Plaintiff

12  in the back of the head, which sent Plaintiff over a chair and he landed flat on the floor with great

13  force.  Defendants O'Rafferty and Kaiois and the unidentified officer began kicking, stomping

14  and beating Plaintiff on his head and torso, which caused extreme pain.  Plaintiff began yelling

15  for help and assistance from Defendant Onstott and Nurse Lacey, both of whom failed to

16  intervene in the beating.  Nurse Lacey turned away in fear, and exited the area to avoid witnessing

17  the beating, which continued for several minutes.  Defendants O'Rafferty and Kaiois and the

18  unknown officer continued to beat, kick and stomp Plaintiff with their hands and feet while

19  Defendant Onstott watched.  Plaintiff continued to yell for help from Defendant Onstott and

20  Nurse Lacey, both of whom failed to intervene as they watched the beating continue.

21        Defendants O'Rafferty and Kaiois then grabbed Plaintiff's left leg.  Defendant Kaiois

22  began to strike Plaintiff's ankle 10 to 15 times with his baton, causing pain.  Defendants

23  O'Rafferty and Kaiois then grabbed Plaintiff's right leg.  Defendant Kaiois began to strike

24  Plaintiff's right ankle 10 to 15 times, causing pain.  Defendant Onstott again failed to intervene or

25  take any action to protect Plaintiff from the beating.  Plaintiff asserts that at no time did he act or

26  resist in an aggressive, physical nature, or in any other manner that would have justified the use of

27  force against him.

28  ///

After the beating, Defendants O'Rafferty and Kaiois lifted Plaintiff into a chair, so that Nurse Lacey could conduct a medical evaluation of Plaintiff's injuries. Nurse Lacey diagnosed multiple head injuries and multiple injuries to both ankles, including a possible broken left ankle, which required immediate emergency treatment from an outside hospital. Defendants O'Rafferty and Kaiois disregarded the nurse's diagnosis and order for emergency treatment, and ordered Plaintiff to stand up on his feet. Due to pain, Plaintiff was unable to stand. Defendants O'Rafferty and Kaiois threatened to beat Plaintiff again if he did not stand up and walk to a holding cage. Plaintiff was forced to walk on injured, bruised, swollen and painful ankles to an elevator, down a long hallway and into a holding cell. Once Plaintiff was left, he collapsed onto the floor unconscious.

The next day, on April 3, 2012, at approximately 10:00 a.m., Plaintiff regained consciousness and crawled to the holding cell door to summon help. Plaintiff gained the attention of a parole officer who was escorting an inmate to a parole board hearing, and explained what had happened the night before. Defendant Jesus Flores, Jr. attempted to close the holding cell window to prevent Plaintiff from seeking help from the parole officer. Defendant Flores then said not to pay attention to Plaintiff and also said that Plaintiff was a mentally ill inmate. Due to the conversation, a California Department of Corrections hearing panel member stepped out into the hallway and heard Plaintiff pleading for help and medical attention. The board member questioned if Plaintiff was a parolee. Plaintiff stated, "I am a discharged parolee who has been severely beaten and assaulted by Tulare County Sheriff Deputies, and I need medical attention." The board member ordered the parole officer and Defendant Flores to get Plaintiff medical attention. Defendant Flores left very angry.

Approximately 10 minutes later, Deputies M. Dillon and B. Oakes arrived and entered the holding cell. Deputy M. Dillon asked, "Omar, who did this to you?" Plaintiff was instructed to stand and step out of the holding cell so that he could be escorted to the nurses' station to receive medical attention. Due to the severity of his injuries, Plaintiff was unable to stand. Deputies Dillon and Oakes carried Plaintiff to the nurses' station.

///

6

1    Upon arriving at the nurses' station, Dr. McAdams questioned Plaintiff about his medical

2    concerns.  Plaintiff described how he had been severely beaten by Defendants O'Rafferty and

3    Kaiois.  Dr. McAdams conducted a records search in the computer and found no records of any

4    medical reports filed in connection to Plaintiff's injuries or medical evaluation.   Dr. McAdams

5    then evaluated Plaintiff's injuries and diagnosed him as suffering from a possible concussion,

6    trauma to the head and neck area and possible broken ankles, requiring Plaintiff to be taken to

7    Kaweah Delta Hospital for emergency treatment.

8    Plaintiff was transported to the hospital by Defendants Darrell Myers and Louis Avina.  It

9    was determined that Plaintiff had suffered multiple head injuries and a possible type (2) fracture

10   of his left ankle.  Upon notifying Defendants Myers and Avina of Plaintiff's injuries and further

11   treatment, including x-rays and a C-T scan, Defendants Myers and Avina asked hospital staff to

12   clear Plaintiff so that he could be returned to custody at the Tulare County Main Jail.  When

13   hospital staff refused, Defendants Myers and Avina attempted to remove Plaintiff from the

14   hospital, but were prevented from doing so by attending physicians and nurses.

15   Plaintiff's x-ray revealed a left ankle injury requiring a cast.  However, Defendants Myers

16   and Avina refused to allow medical staff to apply the required cast and refused to allow any

17   treatment.  Instead, Defendants Myers and Avina returned Plaintiff to custody without treatment

18   recommended by the hospital staff.

19   At approximately 6:00 p.m., Plaintiff was returned to Tulare County Mail Jail, and sent to

20   the pre-trial infirmary for medical care.  He was received into custody of Defendant Stephen Ellis

21   and another unknown officer.  Plaintiff was forced to walk 75 yards to the infirmary cell without

22   any assistance from Defendant Ellis, despite injuries to both ankles.  During his 45-day period in

23   the infirmary, Defendant Ellis denied Plaintiff access to any grievance forms and impeded his

24   ability to seek judicial review for his treatment and beating.  Approximately fourteen (14) days

25   after the beating, Plaintiff contacted the Tulare County Public Defender's Officer and advised

26   attorney Ken Jones what had occurred.  Immediately thereafter, the Public Defender's Office sent

27   a private investigator to the jail to interview Plaintiff and take photos of his injuries.  During the

28   remainder of his incarceration in Tulare County custody, Plaintiff received no further treatment

7

1  for his injuries.

2  **C.   Discussion**

3  **1.   Defendant Tulare County**

4  In his amended complaint, Plaintiff alleges that Defendant Tulare County is liable because

5  its policies, customs and practices "caused and permitted" its employees to use unjustified and

6  excessive force on inmates housed in its facilities on a regular basis, failed to provide adequate

7  monitoring of its deputies to ensure the safety of inmates, and were on notice of repeated

8  constitutional violations by the named defendants.  As a practical matter, the Court dismissed

9  Tulare County from this action with prejudice on February 4, 2015.  (ECF No. 10.)  Nonetheless,

10  the Court will evaluate Plaintiff's allegations against Tulare County to determine whether he

11  states a cognizable claim in his amended complaint.

12  To establish the county's liability, Plaintiff must show that an official policy, custom or

13  practice was the moving force behind a constitutional injury. Monell v. New York City Dept. of

14  Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  A "policy" is a "deliberate

15  choice to follow a course of action ... made from among various alternatives by the official or

16  officials responsible for establishing final policy with respect to the subject matter in question."

17  Fogel v. Collins, 531 F.3d 824, 834 (9th Cir.2008). A "custom" is a "widespread practice that,

18  although not authorized by written law or express municipal policy, is so permanent and well

19  settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S.

20  112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citation omitted); L.A. Police Protective League

21  v. Gates, 907 F.2d 879, 890 (9th Cir. 1990).

22  Plaintiff has not provided specific factual allegations to demonstrate that the county had

23  official policies or customs in place that were the moving force behind the alleged constitutional

24  violations.  Plaintiff's conclusory allegations are not sufficient to state a cognizable claim.

25  **2.   Excessive Force/Failure to Intervene**

26  Plaintiff was a pre-trial detainee at the time of the events at issue.  The Due Process

27  Clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force

28  which amounts to punishment, Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir.

8

2002) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)), and the Fourth Amendment sets the applicable constitutional limitations for considering such claims, <u>Lolli v. County of Orange</u>, 351 F.3d 410, 415 (9th Cir. 2003) (citing <u>Gibson</u>, 290 F.3d at 1198) (quotation marks omitted).

In resolving claims of excessive force brought by pretrial detainees, the Fourth Amendment's objective reasonableness standard applies. <u>Lolli</u>, 351 F.3d at 415. The inquiry is whether Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 397) (quotation marks omitted). The nature and quality of the intrusion on Plaintiff's Fourth Amendment interests must be balanced against the countervailing governmental interests at stake. <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 397) (quotation marks omitted). Factors may include the severity of the incident giving rise to the use of force, whether Plaintiff posed an immediate threat to the safety of Defendants or others, and whether Plaintiff was actively attempting to avoid being subdued or brought under control. <u>See</u> <u>Gibson</u>, 290 F.3d at 1198 (citation omitted). Further, a jail official's failure to intervene to prevent a constitutional violation may be a basis for liability. <u>See</u>, <u>e.g.</u>, <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for Eighth Amendment liability).

At the pleading stage, Plaintiff has stated a claim for excessive force in violation of the Fourteenth Amendment against Defendants O'Rafferty and Kaiois, and has stated a claim against Defendant Onstott for failure to intervene in violation of the Fourteenth Amendment.

### 3. Deliberate Indifference to Plaintiff's Medical Needs

As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount to punishment. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-36, 99 S.Ct. 1861 (1979); <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017–18 (9th Cir. 2010). While pretrial detainees' rights are protected under the Due Process Clause of the Fourteenth Amendment, the standard for claims brought under the Eighth Amendment has long been used to analyze pretrial detainees' conditions of confinement claims. <u>Simmons</u>, 609 F.3d at 1017–18; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

9

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons, 609 F.3d at 1018.  "Deliberate indifference is a high legal standard." Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

At the pleading stage, Plaintiff has stated a cognizable medical indifference claim against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis.

### 4.  Grievances

Plaintiff cannot state a claim against Defendant Ellis related to his grievances.  Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  A prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

### 5.  State Law Claims

#### a.  Negligence

Plaintiff alleges that defendants were negligent related to his medical treatment.

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks

10

(duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)).

Here, Plaintiff has alleged a cognizable negligence claim against Defendants O'Rafferty, Kaiois, Flores, Jr., Myers, Avina and Ellis related to medical treatment.  However, there are no allegations linking Defendant Onstott to Plaintiff's medical treatment or care.

### b.     Government Code § 845.6

Plaintiff alleges a violation of Government Code § 845.6, based on defendants' purported failure to take reasonable action to summon medical care.  Section 845.6 states in relevant part:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856 [concerning mental illness and addiction], a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code § 845.6.  Section 845.6 imposes liability on a public employee and public entity when: (1) the public employee "knows or has reason to know of the need," (2) for a prisoner's "*immediate* medical care," and (3) "fails to take reasonable action to *summon* such medical care." Castaneda v. Dep't of Corrs. & Rehab., 212 Cal. App. 4th 1051, 1070 (2013) (emphasis in original).

Here, Plaintiff has failed to state a cognizable claim for failure to summon medical care as Plaintiff admits that he was seen by medical staff on at least 3 separate occasions within a 2-day period, and was housed in the infirmary for at least 45 days.  According to Plaintiff's allegations, Defendants O'Rafferty and Kaiois transported Plaintiff to the nurses' station, where he was evaluated by a nurse.  Defendant Onstott also was present when Plaintiff was brought to the nurse's station.  Additionally, Plaintiff alleges that Defendant Flores, Jr. was ordered to summon treatment, and following that order Plaintiff was taken for evaluation by a doctor and then for treatment at Kaweah Delta Hospital.  Finally, events involving Defendants Avina and Myers

occurred while Plaintiff was receiving treatment at Kaweah Delta, and events involving

Defendant Ellis occurred while Plaintiff was transported to and housed in the infirmary.

**III.    Conclusion and Recommendation**

Based on the foregoing, the Court finds that Plaintiff has stated a cognizable claim against (1) Defendants O'Rafferty and Kaiois for excessive force in violation of the Fourteenth Amendment, (2) Defendant Onstott for failure to intervene in violation of the Fourteenth Amendment; (3) against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment; and (4) a state law negligence claim against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis.  However, the Court finds that Plaintiff has not stated any other cognizable claims.

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that:

1.    This action proceed on Plaintiff's first amended complaint against (1) Defendants O'Rafferty and Kaiois for excessive force in violation of the Fourteenth Amendment, (2) Defendant Onstott for failure to intervene in violation of the Fourteenth Amendment; (3) against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment; and (4) against Defendants O'Rafferty, Kaiois, Flores, Avina, Myers and Ellis for negligence in violation of state law; and

2.    All other claims and defendants be dismissed from this action, with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the

12

magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 6, 2017**                    /s/ *Barbara A. McAuliffe*
                                                 UNITED STATES MAGISTRATE JUDGE